First argued matter on today's argument calendar, Oles v. City of New York, 22-1620. Good morning. Good morning, your honors. Robert Lauer for appellants and may it please the court. The following is undisputed. Appellants live upstate, registered their pickup truck commercially per DMV guidance, drove into Manhattan to pick up a couch, and paid to park where New York City directs commercial vehicles to park. Mr. Lauer, can you raise your voice? Of course. My apologies. That's the entirety of appellant's purported misconduct, warranting up to 30 days in prison and over $230 in fines. All parties agree both of appellant's parking tickets would be invalid if their name and private home address had been painted on the outside of their truck. The first issue today is whether federal law preempts New York City's regulations requiring obscure, destructive alterations to all vehicles that New York City deems commercial. As the Supreme Court, Circuit Courts, Department of Transportation, and even New York City's legislature has now conceded. Excuse me, but there's no question, is there, that the truck was not being used for commercial purpose despite the fact that it had commercial plates? That's correct, Judge Sack. Shortly after this action was filed, the local legislature quietly amended administrative code 10-127, deleting the address display requirement and adding new language specifically stating the city's marking rules shall not be more restrictive than federal regulations. Yet, the city still has not changed or stopped enforcing its more restrictive marking rules requiring name and address to be permanently displayed on the outside of the vehicle, for example. The second issue is whether the district court erred in holding, as a matter of law, that there's nothing inconsistent about separately fining a vehicle for being both commercial and non-commercial at the same time, which is the case for appellants. When NYPD swears under penalty of perjury that they observed and ticketed a vehicle for being both commercial and non-commercial at the same time, the predicate factual allegation for each ticket constitutes an affirmative defense to the other. And at this stage, when questions of fact are to be resolved in appellant's favor, the district court's conclusion that, as a matter of law, there was nothing inconsistent about those tickets constituted error. We also submit the district court erred in holding 49 U.S.C. 31141 applies only to safety regulations and not appellee's regulations. The opposition papers at 15 reiterated that contention, indicating that statute has no bearing here, which our reply at 10 contested in detail. However, because none of these competing interpretations cited specific authority, we further researched this issue and identified one decision in the Fifth Circuit which endorsed appellant's characterization of Section 31141 and specifically held that the U.S. DOT FMCSA retains authority to invalidate non-safety-related laws that improperly burden interstate commerce, just like the ones at issue here today, pursuant to Section 31141. You say that's a decision in the Fifth Circuit or from the Fifth Circuit? From the Fifth Circuit. It's United Motor Coach Association v. Austin. That's 851 F3D489. Notably, that Fifth Circuit decision affirmed a permanent injunction of Austin's commercial vehicle decaling requirements by the Western District of Texas, whose injunction order notably block-quoted the 2010 FMCSA preemption of New York City's credential display requirements as authority supporting its since-affirmed permanent injunction of Austin's decaling requirements, corroborating the valid and binding nature of the FMCSA's 2010 determination that we're relying on in this matter. I'd also like to touch on bias. For example, the opposition at 10 averes appellant must allege specific bias in their case to state a claim. We would like the court to take a good look at Ward v. Village of Monroeville, cited in reply at 25. In that case, after Monroeville's mayor found Ward guilty of two $50 traffic offenses, the Supreme Court held the mayor's responsibility for Village finances violated Ward's right to a neutral and detached judge in the first instance, even though the mayor's salary was not augmented by the fines in a second trial before an unbiased judge was available. Here, in addition to all the circumstances present in Monroeville, appeals are heard by the same biased Department of Finance contract attorneys that decide matters in the first instance, and appellants have presented several additional independent grounds establishing the unlawful and or impossible nature of the violations alleged. We'd also like the panel to review the district court's erroneous application of rational basis review to regulations upon fundamental constitutional rights. It's sua sponte authorship of a purportedly rational basis for New York City's restrictions without support in the record. I'm sorry, your position is that the city has no rational basis that would satisfy your First Amendment and 14th Amendment claims in restricting commercial vehicles to parking in commercial spaces. It is our position that there's no rational basis, but also that that's not the appropriate standard to apply in a case like this, and that even as discussed in our principal papers at 17 to 18, the purportedly rational basis provided by the district court is a reason that appellees never said until it appeared in the district court's opinion. Appellees had indicated that these requirements are for the purpose of identifying commercial vehicles, whereas the city sua sponte identified a public welfare interest in controlling which vehicles can use limited commercial parking spaces. Again, without any support in the record. So certainly I think any type of basis that a district court uses to uphold a regulation should have some factual support. As to 31141, the section that you mentioned earlier, can you tell me where the complaint alleges that the truck here, however you want to describe it, actually meets the definition of commercial motor vehicle? It does not. And there's at minimum three definitions of commercial vehicle that the city applies to perpetuate these conflicting ticketing schemes, which make it quite difficult to say confidently that under one specific definition it should be interpreted this way. But 31141 is not a statute that applies to a specific type of vehicle necessarily. It gives the Department of Transportation power of law, power to bind every district court in the country, and the matters that it's permitted to decide is not about the types of vehicles. It's about whether municipal and state regulations that conflict with or impose more restrictive requirements than federal law will be permitted to exist. And in this particular matter, the FMCSA explicitly proscribed New York City and Chicago's name and address display requirements without any exceptions and without indicating that, for example, only one type of vehicles would be exempted. The rules were deemed invalid and without effect and preempted in their entirety, citing 49 U.S.C. 14506 as the ground for the FMCSA's decision. Okay. You've reserved three minutes for rebuttal, Mr. Lowe, so we'll hear from Mr. Pepper. Thank you. Good morning. May it please the court, Jeremy Pepper for the appellees in this case. This court should affirm the district court's decision. I can address my adversary's arguments. I'd like to start with federal preemption. I just want to note that the appellants cite to three different provisions of the U.S. Code, and so I'll go one by one and address them. The first is 14501C, which prohibits local regulation of price, route, or service of commercial vehicles. They specifically define commercial vehicles as motor carriers or freight forwarders, which are defined as vehicles providing transportation for compensation. I want to note it's been undisputed that the vehicle in this case was not providing transportation for compensation. So 49 U.S.C. 14501C does not apply. But furthermore, appellants can cite to no case that shows that parking regulations are regulations of price, route, or service, as the district court found. Moving to 49 U.S.C. 14506, that law prohibits local governments from requiring the display of any form of identification, again, on a motor carrier or freight forwarder. That's inconsistent with 49 CFR 390.21. Again, the appellants in this case were not providing transportation for compensation, so 14506 does not apply. But even if we were to look at the language of 14506, it explicitly provides that local governments can require identification consistent with 49 CFR 390.21, which requires the name of an owner of a commercial vehicle to be displayed on the side of the vehicle. So at least as far as the name requirement goes, it's explicitly permitted by federal law. And finally, moving to 49 U.S.C. 311.41, it prohibits enforcement of local laws dealing with motor vehicle safety, which the Secretary of Transportation has explicitly found to be preempted. What is the purpose of this rule? What is the purpose of this traffic requirement? Well, Your Honor, there are two traffic laws at issue here. The first is the simpler one, which prohibits parking in commercial spots by non-commercial vehicles. Well, that I get. That one we can talk about. Okay. The second- The otter one. The second rule, which requires the posting of name and address information on the side of vehicles, our position below is that it provides for the quick and easy- What is the purpose? The purpose is the- I mean, I am interested in your position, but I'm interested in the purpose of this rule. The purpose is the quick and easy identification of the owners of commercial vehicles operating parking and standing in the city of New York. There's any number of reasons why- For traffic control? What is it for? That's correct. That's one reason. I note that of the 40 agencies that have ticketing authority in the city, not all of them have access to DMV records, like the appellants have pointed to with the NYPD. But even moving past that, I think that allowing for a quick ID of a commercial vehicle that may be parked or standing in a place that's unsafe or creating traffic jams or any number of reasons, it would be a legitimate interest for the government to be able to quickly and easily identify the owner of that vehicle. So it would be both a commercial, for ticketing purposes, both a commercial vehicle and not a commercial vehicle at the same time? Right. So I think that's- Just let me grab my binder. That's a little bit of a misreading of the traffic laws in this case. And I can tell you, so the law at issue here is the one that says parking of unaltered commercial vehicles prohibited. What is that? I'm sorry. That's the wrong statute. I'm looking at 4-08L32. I'm getting myself confused here. I apologize. We're at 4-08K1. It says no person shall stand or park a vehicle with commercial plates unless it has been permanently altered so that the name and address of the owner, as shown on the registration certificate, plainly marked on both sides of the vehicles. And furthermore, in 4-01BI, it says a vehicle will not be deemed a commercial vehicle unless it both bears commercial plates and displays the registrant's name and address. So in this case, it would be the position of the city that appellant's vehicle is not a commercial vehicle because it doesn't fit the definition found within 4-01BI, which defines commercial vehicles. And I think that goes towards the need for this because appellants went to the DMV- But it was also found to be- Am I wrong or right that it was also found to be a commercial vehicle? No, that's- It was never found to be a commercial vehicle. I will read you the- It was found to be an unaltered- Excuse me. Excuse me. It's not a commercial vehicle, but it has commercial plates. That's correct, Your Honor. And I was just about to state that it's in the city's interest to be able to distinguish between those two things. If the DMV is allowing people with certain cars to acquire commercial plates that aren't commercial businesses, I mean, this case is an example. Appellants drove into the city in their personal vehicle, parked in commercial spots, took spots away from other vehicles that may have been legitimately engaged in commerce. Then why should they have been permitted to get commercial plates in the first place if it wasn't being used for commercial purposes? Your Honor, I think that's a question for the state DMV. Is it possible that in some circumstances it was being used as a commercial vehicle, but just in this instance it wasn't? It's possible. There's no evidence in the record to support that. It's been undisputed throughout the record that this was exclusively a personal vehicle, and that the only thing they cite to explaining why they got commercial plates is a website from the DMV that says that people with certain cars can get commercial plates even if they're not commercial vehicles. Your friend on the other side seemed to suggest that the city's regulation would require it to put what's in essence private information, Mr. Ellis' mother's private phone number and address on the side of the truck in an objectionable way. If it were being used for commercial purposes, is there a way? Do you know whether a business address and number could have been displayed as opposed to a private personal address? Yes, that's correct. And just to clarify one thing, no, there's no requirement for phone number. It's just name and address. I see. But moving on, it would be the name and address of the owner of the vehicle. If that was a corporation or a business, that name and address could have been put on the side. I walk around the city and I see any time a commercial plate, it'll say, you know, XL Incorporated. It doesn't have, you know, the owner of that company's name on the side. It generally has a commercial entity. And I just want to posit that in putting commercial plates on their vehicle, holding themselves out as a commercial vehicle, they subject themselves to a different standard in the First Amendment venue, which is rational basis. Commercial speech has been held to be subject to the rational basis test many times. And so I think so far as there's a legitimate government interest for that regulation, it should be permitted. I just want to clarify a couple of things that my adversary said on his argument. Again, he pointed to DMV guidance that required them to put these commercial plates on their cars. There's no guidance in the record. Again, there's a website that says that they may or they're permitted to. But it doesn't, there's no evidence that they were required to. I also want to clarify that when my adversary references prison sentences under this law, he's referring to a completely different provision found within the New York City administrative code. The laws at issue here are found within the traffic code, which is authorized by the state vehicle and traffic law. The traffic code does reference this administrative code, but simply for the purposes of defining what types of information are required to be on the side of the vehicle. So in referencing a prison sentence, I think that's a little bit misleading to this court. And I just also just really quickly while I have a minute left. I'm sorry. He says that New York City Administrative Code 10-127C authorizes fines and up to 30 days imprisonment for drivers of any commercial vehicle operating on the streets. It's not complied with the vehicle alteration requirements. He's mistaken in that? He's not, but he wasn't ticketed under that law. So it's not at issue in this case. Okay. And finally, he points to an FMSCAA agency decision that preempt found this city law and a Chicago law to be preempted. That dealt with a completely different law that dealt with tax decals that should show that these vehicles have paid their highway taxes. And furthermore, that specifically as New York City was further overturned by the FMSCAA a few years later. So the original decision was in 2010. And it was overturned two years later. And the Department of Transportation specifically found that because the decal was in connection to a highway tax, it was specifically authorized by the statute. So I would just clarify that. And if there are no further questions, I'll rest my briefs. Thank you. Thank you. Okay. With respect to Apelli's contention that the vehicle is not a commercial vehicle, well, they convicted him of a violation code 82, violation that the city's definition as of today in the entirety of this litigation says standing a commercial vehicle unless name and address of the owner are displayed on it. So it's not our opinion that this was one ticket was for a commercial vehicle. The other is for a noncommercial. The city's own definition for the other ticket. So what is your position that the vehicle was? It bore commercial plates. If you make an unlimited number of definitions for the word commercial, the city can issue any number of tickets based on factually inconsistent positions. But it bore commercial plates. It was not being used for commercial activity. It was not being compensated for the activity it was engaged in. That's correct. And with respect to Apelli's contention. What's inconsistent about it? Pardon? About what? What's inconsistent? About the two different definitions. You just stated it. It's not clear to me what's inconsistent about it. Sure. 34 RCNY 401B states, for purpose of parking, stopping, and standing rules in the city, a vehicle will not be deemed commercial unless it bears commercial plates, is altered, and displays the registrant's name and address on it. What section is that? That's 34 RCNY 401B. So New York City specifically said that this is one definition that applies to all rules. However, they carry on and author additional definitions that they bake into sub-rules and then issue tickets based on those. In this case, we have 408K1 and 408L3II as sections imposing their own completely new definitions, such as with respect to 408K1, that's just a vehicle with commercial plates. That's it. So naturally, they fit. By authoring these factually inconsistent definitions that violate even their own 401B requirement, they're able to mint tickets and stag them like this. What is it that you want? Well, the vehicle alteration regulations are clearly proscribed by federal law and binding FMCSA decisions that district courts have no authority to contest or review. What is it that you ultimately want, is my question. So certainly refunds for drivers that have been illegally ticketed under these schemes. And the second category is tickets that allege you did something that the officer just swore you did not do. Parked a commercial vehicle, but it's just swore under penalty of perjury it's non-commercial. If I might make one last point. Parked the vehicle with a commercial license plate, right? That's correct. Whether or not it was being used for a commercial purpose. Right. And contrary to Apelli's assertions at JA-12, you will find the guidance thoroughly cited. That's not really been contested until today. How did your client get the commercial plates? I'm just interested. He was advised to put them on the pickup truck at the DMV. That's it. Is there a representation that his truck was a commercial vehicle? No, there isn't an inquiry or that you can get commercial plates on a smart car without making any representations to that effect is my understanding. And with respect to the state's reasons. What is it that you need to sign to get commercial plates? So if you and I went to the DMV today, I could just say I want a commercial plate without signing anything? I believe it's pretty much just a tick box, but I'd be exceeding my knowledge on the record. Everything is in the ticks, so when I tick the box, what am I saying? Ed, I do need to concede. That's not something we've had on the record, and I'm not sure off the top of my head. No, I understand. I understand. I'm just interested. Apologies. If I might make one last point. Of course. With respect to 14-501 and 14-506. Appellee's high-level arguments are for Ward-Oles, he can't complain about those preemption grounds. Our position is, so 14-501, that invalidates local regulations that impact things like the route for motor carriers. It says price, route, or service, right? Correct, Your Honor, and these statutes have been interpreted wildly broadly. For example, preempting a requirement to ID someone at a home when they're receiving an alcohol delivery. I mean, no vehicles whatsoever. Well, that still has a commercial aspect to it, doesn't it? I mean, I don't see how price, route, or service affects what your client was engaged in. Well, by making it a crime for any motor carrier without their address and name to exist in the city, I don't think it's a wild ask to suggest that that's impacting the route of millions of motor carriers. So, because New York City's rules are related to motor carriers, route, and unrelated to safety, New York City cannot enact or enforce them. Other jurisdictions that have looked at this, including the Supreme Court in a 9-0 decision reversing the Ninth Circuit, have reached the same conclusion with respect to the city of Los Angeles. With respect to 14-506, it doesn't differ much in substance, but that governs the credentials displayed on vehicles and what municipalities can require. Because New York City's rules require motor carriers, among others, to display identification other than Section 390.21 requires, New York City cannot enact or enforce those rules, period. The fact that Mr. Oles is or is not engaged in commercial activity has nothing to do with whether or not New York City is permitted to require commercial vehicles to display credentials in excess of 390.21. And shortly after this litigation... I'm sorry, just to go back to something you said about the Fifth Circuit. Does the Fifth Circuit decision deal with this issue? Yeah, there was a number. Yes, question mark? Your Honor, there was more regulations in that docket than I could possibly recite below the Western District. So it was about buses operating in Austin and just myriad regulations that were being applied to them. The decaling requirements are extremely similar to this, and the Western District... What is the name of the case, again? That is United Motor Coach v. Austin 851 F3D 489. But the decision that the Fifth Circuit affirmed in that case goes into extensive detail, literally quoting, talking about New York City's name and address display requirements. So, I mean, it literally talks about the exact rules we're complaining about here. And that was rendered in what year, that case? That was rendered in 17. However, the decision below... In 2017, so that's been on the books for... Yeah, but the Western District case, that's case number 113, CB 1006, January 13, 2016, order, ECF number 84 at 20, block quoting, the FMCSA preemption of New York City and Cook County's credential display requirements is authority supporting its decision, which was affirmed by the Fifth Circuit in the first site that I just provided. Did you cite this in your opening brief? This is the only thing that I've raised today, and I did front load that, saying that all parties have taken different positions about 31141's applicability. No one, the district court and no council, has provided a site yet to a case that interprets it either competing way. And this is the only decision we've been able to find. So the city has not had a chance to comment on this case? That's correct, Your Honor. So I think it might be helpful to, although it is an out-of-circuit decision, for the city to at least have an opportunity to respond to it. And then we'll play it a little bit by ear, but if there's a lengthy response, then by, is Friday okay? Yes. This Friday? Yes. Then subject to our, obviously, discretion, we may ask for a further response from the appellate. Okay? Sure. Thank you very much. If a one-sentence conclusion might be permitted. You have ten seconds. Go ahead. We respectfully request an order in joining the federally preempted regulations, reversing the district court's denial of leave to amend, staying discovery, and dismissing the case. Thank you, Your Honor. Thank you very much. We'll reserve the decision.